IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERYL STEWART, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No. 19-4776 |
| | : | |
| v. | : | |
| | : | |
| ETHICON, INC., and JOHNSON & JOHNSON, | : | |
| | : | |
| | : | |
| Defendants. | : | |

McHUGH, J.                                                                                                    March 19, 2020

## MEMORANDUM

### I.  Introduction

This case is one of several cases in this district arising out of injuries caused by alleged defects in so-called pelvic mesh devices manufactured by Ethicon, Inc., and Johnson & Johnson. In August 2019, Plaintiff Cheryl Stewart, a citizen of Texas, sued Ethicon and Johnson & Johnson in the Court of Common Pleas of Philadelphia County, pleading various state law claims for injuries allegedly caused by defects in the manufacturers' device.  The suit was filed in the Court of Common Pleas' mass-tort program under the caption *In re: Pelvic Mesh Litigation*.  In addition to Ethicon and Johnson & Johnson, Plaintiff also sued Secant Medical, Inc., and Secant Medical, LLC (collectively referred to as "Secant"), which produce the mesh used in the devices.  Ethicon and Johnson & Johnson are citizens of New Jersey.  Secant, with its principal place of business in Bucks County, is a citizen of Pennsylvania.

After Plaintiff filed her state court complaint, Secant moved to dismiss.  To support its motion, Secant pointed to a previous order in the same case holding that Secant was a

"biomaterials supplier" and, as such, statutorily immunized under the Biomaterials Access Assurance Act (BAAA), a federal law that generally protects "biomaterial suppliers" from liability in claims alleging injury from medical implant devices. *See* 21 U.S.C. § 1601 *et seq.* The Court of Common Pleas granted Secant's motion to dismiss and ordered Plaintiff to file an amended complaint "that does not name any Secant entity as a defendant." ECF 1-1, at 82 (PDF p. 98). Plaintiff complied, *see* ECF 1-1, at 84-85, after which Ethicon and Johnson & Johnson (hereinafter referred to as the "Removing Defendants") removed the case to this Court, claiming diversity as the basis for the Court's subject matter jurisdiction. ECF 1, ¶ 1.

The current dispute centers on whether removal was proper. To support their claim that this Court may exercise subject matter jurisdiction, the Removing Defendants contend that complete diversity exists even though Plaintiff also named Secant, a nondiverse party, in its complaint. According to the Removing Defendants, complete diversity exists because the nondiverse defendant was joined only to destroy diversity jurisdiction, thus implicating the "fraudulent joinder" exception to the complete diversity requirement. *Id.* Plaintiff responds that the nondiverse defendant was properly joined and moves to remand the case to state court. ECF 6, at 10-13. For the reasons that follow, I will deny Plaintiff's motion to remand, and grant Removing Defendants' motion to transfer this action to the Northern District of Texas.

**II.   Background**

Resolution of the present motion to remand requires some insight into the history of litigation over these devices in the Philadelphia County Court of Common Pleas and the federal courts, as follows.[1]

---

[1] For a thorough discussion of the history of this and related litigations, see Judge Kearney's opinion in *Monroe v. Ethicon, Inc., et al.*, No. 19-5384, at 3-9 (E.D. Pa. Dec. 23, 2019), ECF 21.

2

*1. Suits filed in Philadelphia state court, removal to federal court, transfer to a multidistrict litigation, and remand to state court.* Pelvic mesh devices manufactured by these Removing Defendants have been controversial for years, allegedly causing injuries to many thousands of women who thought they could rely on them. As a result of these injuries, individual plaintiffs have brought lawsuits in state and federal courts across the country.

In July 2013, three plaintiffs filed claims against Ethicon and other defendants, including Secant, in the Philadelphia Court of Common Pleas. After those plaintiffs filed suit, Ethicon removed each case to this Court. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2013 WL 6710345, at *1 (S.D.W. Va. Dec. 19, 2013). After removal, but before any additional motions practice, the cases were transferred to a multidistrict litigation (MDL) that had been established in the United States District Court for the Southern District of West Virginia. That MDL was tasked to handle various individual pelvic mesh cases filed against Ethicon and Johnson & Johnson. *See In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2019 WL 385423, at *2 (S.D.W. Va. Jan. 30, 2019) (discussing the history of the multidistrict litigation, hereinafter referred to as the Southern District of West Virginia MDL).

Once transferred to the Southern District of West Virginia MDL, the plaintiffs moved to remand their cases back to the Philadelphia Court of Common Pleas. In doing so, plaintiffs argued that Ethicon's removal of the state court actions was barred by the "forum defendant rule" because Secant, a citizen of Pennsylvania, was named as a defendant in the original complaint. The forum-defendant rule provides that an action otherwise removable based on diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

In its opposition to plaintiffs' motion to remand, Ethicon argued that Secant was "fraudulently joined" because it was immune from liability as a "biomaterials supplier" under the BAAA. The BAAA generally provides that "a biomaterials supplier"—an entity that supplies either raw materials or component parts for medical implants—"shall not be liable for harm to a claimant caused by an implant." 21 U.S.C. § 1604(a). To effectuate that goal, for parties believing themselves to be biomaterials suppliers, the BAAA created an "expeditious" motion to dismiss procedure. *See* 21 U.S.C. §§ 1601(15)(B), 1605(a). Suppliers such as Secant can secure dismissal by establishing: (1) that it is "a biomaterials supplier"; (2) that it is not liable as a "manufacturer" or "seller" of the failed implant as those terms are narrowly defined by the Act; and (3) that it did not furnish raw materials or component parts for an implant that failed to meet applicable contractual requirements or specifications. 21 U.S.C. § 1604(a), (b), (d).

The plaintiffs disputed that the BAAA immunized Secant but maintained that whether Secant *ultimately* was protected by the BAAA was legally irrelevant. They noted that the fraudulent joinder doctrine placed a "heavy burden" on the party seeking to invoke it to show that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2013 WL 6710345, at *2 (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). Plaintiffs argued that they had presented enough evidence that the BAAA *may* be applicable to Secant, which they believed was sufficient to defeat a claim of fraudulent joinder.

In December 2013, the Southern District of West Virginia MDL granted plaintiffs' motion to remand. *Id.* at *1. In doing so, the court reasoned that "the dearth of case law interpreting the B.A.A.A." made it "difficult to determine whether the B.A.A.A. is applicable to Secant." *Id.* at *3. According to the MDL court, then, "[b]ecause all legal uncertainties are to be

4

resolved in the plaintiff's favor in determining whether fraudulent joinder exists, a truly 'novel' issue such as this cannot be the basis for finding fraudulent joinder." *Id.* The court thus held that plaintiffs did not fraudulently join Secant and remanded the cases back to the Philadelphia Court of Common Pleas.

*2. The state court assigns all pelvic mesh cases to a mass tort program, then dismisses Secant with prejudice under the BAAA.* In February 2014, the Philadelphia Court of Common Pleas created a mass tort proceeding for all pelvic mesh matters. Judge Arnold New, who was managing that court's mass tort program, ordered all pelvic mesh matters—including those just remanded from the Southern District of West Virginia MDL—to be filed under the caption *In re: Pelvic Mesh Litigation*, February Term 2014, No. 829.

In May 2014, several new individuals filed complaints in the Philadelphia Court of Common Pleas' mass-tort program against Ethicon and other defendants, including Secant, for injuries caused by alleged defects in implanted pelvic mesh devices. ECF 1-3, at 3 (PDF p. 114). Secant moved to dismiss, arguing that it was immune from liability under the BAAA. In August 2014, Judge New entered an order finding Secant to be a "biomaterials supplier" as defined by the BAAA and, as such, immune from suit for injuries caused by defective pelvic mesh devices. ECF 1-2, at 2-3 (PDF pp. 110-11). Based on that finding, Judge New dismissed with prejudice Secant from the state court pelvic mesh litigation. *Id.*

After Judge New issued his August 2014 Order, plaintiffs, defendants, and Secant stipulated that (1) the August 2014 Order "is global in nature and binding on all Pelvic Mesh cases then pending or thereafter filed in the Philadelphia County Court of Common Pleas"; (2) "Plaintiffs agree not to name the Secant Defendant as a defendant in any Pelvic Mesh matter initiated in the [Philadelphia County Court of Common Pleas] after the date of this stipulation";

(3) the "Stipulation has no impact on any appeal rights Plaintiffs may have regarding the August 22[, 2014] Order"; and (4) "[i]f Plaintiffs appeal the August 22[, 2014] Order, and if the Order is reversed by the appellate courts, the Secant Defendants agree not to assert a statute of limitations defense to any Pelvic Mesh-related claim that a Plaintiff thereafter asserts or seeks to assert against the Secant Defendants, provided the Plaintiff had timely asserted Pelvic Mesh claims against other defendants in the [Philadelphia County Court of Common Pleas]." ECF 1-1, at 35-36 (PDF pp. 51-52).

*3. This Plaintiff files suit against Ethicon, Johnson & Johnson, and Secant in the Philadelphia Court of Common Pleas.* Five years or so hence, the Plaintiff in this case, Cheryl Stewart, a citizen of Texas, sued Ethicon and Johnson & Johnson in the Philadelphia Court of Common Pleas, pleading various state law claims for injuries allegedly caused by their defective pelvic mesh device. In her original Complaint, Stewart—like the plaintiffs before her—also sued Secant.

Shortly after Stewart filed her state court complaint, Secant moved the Court of Common Pleas to dismiss her claims against it, arguing—like it did before—that they were statutorily immunized by the Biomaterial Access Assurance Act (BAAA). On September 26, 2019, Judge New again dismissed Secant with prejudice as immune under the BAAA. ECF 1-1, at 82 (PDF p. 98). Judge New's September 2019 Order mirrored his August 2014 Order, which had dismissed Secant as immune under the BAAA. *See* ECF 1-2, at 2 (PDF pp. 110-11). For all practical purposes, the two orders were identical.

Instead of incorporating the previous order, however, Judge New ordered Stewart to file an amended complaint "that does not name any Secant entity as a defendant." ECF 1-1, at 82 (PDF p. 98). Stewart complied, *see* ECF 1-1, at 84-85, thus eliminating from the case the only

6

Pennsylvania citizen and forum defendant. Thereafter, Ethicon and Johnson & Johnson—the "Removing Defendants"—noticed removal to this Court, claiming diversity as the basis for the Court's subject matter jurisdiction. ECF 1, at 1. Whether Removing Defendants' removal is proper is the question presently before this Court.

### III. Diversity, Removal, and Fraudulent Joinder

#### A. Proper removal to federal court requires complete diversity and no forum state defendant

A defendant has the right to remove a civil action from state court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a). For removal based on diversity of citizenship, federal jurisdiction requires complete diversity between the parties—every plaintiff must be of diverse state citizenship from every defendant. 28 U.S.C. § 1332(a); *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). Moreover, a defendant may not remove an action originally filed in state court to federal court "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

The general rule is that the existence of diversity of citizenship is assessed by evaluating "the state of things at the time of the action brought." *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824). But diversity of citizenship can also arise while a case is pending: "In a case not originally removable, a defendant who receives a pleading or other paper indicating the post-commencement satisfaction of federal jurisdictional requirements—for example, by reason of the dismissal of a nondiverse party—may remove the case to federal court within 30 days of receiving such information." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996) (citing 28 U.S.C.

§ 1446(b)(3)).[2] On its face, Section 1446(b)(3) would appear to authorize removal of the case as a result of Secant's dismissal. But there is a judicial gloss on removal dating back to *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 281 (1918), commonly referred to as the "voluntary-involuntary rule." Under the rule, cases "not initially removable cannot become removable except by a voluntary act of the plaintiff, such as amendment of the pleading or voluntary dismissal of the non-diverse defendant." *Rubino v. Genuardi's Inc.*, 2011 WL 344081, at *5 (E.D. Pa. Jan. 31, 2011).

Section 1446(b) was amended in 1949, and there is an obvious tension between *Alexander* and the literal terms of the statute. The Third Circuit has not yet addressed the issue, but most district courts within this Circuit recognize the continued viability of the rule, and this is consistent with the consensus nationally. 14B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723 (August 2019 edition). I will therefore assume that involuntary dismissal of a nondiverse plaintiff remains a basis for defeating removal. By Plaintiff's view of the case, removal was improper, because Secant was dismissed involuntarily. Although that is true, it does not end the inquiry, because diversity can still exist if the nondiverse defendant was not properly joined.

### B. Fraudulent joinder is an exception to complete diversity and removal requirements

The so-called voluntary-involuntary rule does not apply where a plaintiff fraudulently joins a party to defeat federal jurisdiction requirements. *See In re Briscoe*, 448 F.3d at 215-16; *see also* 28 U.S.C. § 1441(b)(2) (noting removal improper "if any of the parties in interest

---

[2] It should be noted that there is a time limitation of one year for removal under Section 1446(b), "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c)(1).

8

*properly joined* and served as defendants is a citizen of the State in which such action is brought" (emphasis added)).  Defendants may assert "fraudulent joinder," establish diversity jurisdiction, and remove a case to federal court if they can demonstrate that there is no lawful basis for recovery against the nondiverse defendant.  *Id.* at 216.

I have previously observed that the fraudulent joinder exception "should not be invoked lightly" because the "removal statutes are to be strictly construed against removal."  *Badman v. Wal-Mart Stores, Inc.*, 2019 WL 5802695, at *1 (E.D. Pa. Nov. 6, 2019) (quoting *In re Briscoe*, 448 F.3d at 217).  A plaintiff's decision to join a nondiverse party may be considered fraudulent only if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant."  *In re Briscoe*, 448 F.3d at 217.  It bears emphasis that *Briscoe* recognizes two forms of fraudulent joinder—where there is no colorable basis supporting the claim *or* where there is no intent to pursue the nondiverse defendant named.

To determine whether a plaintiff has established a colorable claim against the nondiverse party, a district court must focus on the factual allegations in the state court complaint.  *See Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).  The court should not reach the merits of the claim, but only determine whether the allegations are "wholly insubstantial or frivolous."  *In re Briscoe*, 448 F.3d at 217.  Necessarily, however, courts must be able to look beyond the pleadings to consider what a plaintiff's intentions are with respect to pursuing a particular defendant, and the Court of Appeals has clearly held that a court can "look to more than just the pleading allegations to identify indicia of fraudulent joinder."  *Id.* at 219.  Short of reaching the merits, at least in some cases there are means by which a court can test whether a plaintiff had a real intention to pursue a claim.

9

## IV.  Secant was fraudulently joined because Plaintiff did not intend in good faith to pursue claims against it

Removing Defendants argue that "the voluntary-involuntary rule does not bar the removal because the state court's prior dismissal of the sole diversity-destroying defendant in this action demonstrates that Plaintiff fraudulently joined that defendant for the purpose of defeating federal jurisdiction." ECF 1, at 1, ¶ 1.  Plaintiff responds that there was "ample basis for Plaintiff to sue Secant as a manufacturer of the [pelvic] mesh devices that injured her." ECF 6-1, at 11.  My review of the record leads me to conclude that Plaintiff did not intend in good faith to pursue Secant, rendering its joinder fraudulent.[3]

Preliminarily, I address Plaintiff's argument that the initial ruling by the MDL judge—in which he declined to find fraudulent joinder of Secant—is controlling or should carry significant weight.  *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2013 WL 6710345, (S.D.W. Va. Dec. 19, 2013).  The court there placed considerable emphasis on the "dearth of case law interpreting the B.A.A.A.," which made it "difficult to determine whether the B.A.A.A. is applicable to Secant." *Id.* at *2-3.  The dearth of precedent is not surprising when one considers the provisions of the BAAA.  The scope of the immunity it confers is broad, and the narrow basis on which a biomaterials supplier can be found liable is specified in unusual detail.  In addition, there are procedural requirements imposing substantial burdens on any plaintiff at the outset of the case.  For example, if a plaintiff seeks to claim that a supplier qualifies as a

---

[3] I assume that Plaintiff's strategic objective in naming Secant was to defeat diversity.  That would not constitute fraudulent joinder.  As the Supreme Court held long ago, "in a removal proceeding the motive of a plaintiff joining defendants is immaterial, provided there is in good faith a cause of action against those joined." *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 189 (1931).  Even a specific intent to avoid federal jurisdiction is of no moment:  "The fact that the plaintiffs' motive for joining a [nondiverse] defendant is to defeat diversity is not considered indicative of fraudulent joinder." *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 32 (3d Cir. 1985) (Higginbotham, J.).

"seller" under the BAAA, it must file an affidavit meeting a highly technical definition prescribed by the statute. 21 U.S.C. § 1605(c)(2)(B). Further, the lack of case law reflects the reality that an entity such as Secant will be immune as a matter of law in cases such as this except under the rarest of circumstances. I do not rest my decision on the strength of Secant's immunity, as Plaintiff may well have a "colorable" claim against it, but it is nonetheless relevant to my analysis of whether Plaintiff ever intended to pursue the claim.

The timing of the MDL decision is also relevant. The ruling in the MDL was issued before Judge New first found Secant immune in his decision rendered in August 2014. In that respect, it is highly relevant that Plaintiff filed her suit in the same state court that previously addressed Secant's liability. As two of my colleagues have observed, the state court's August 2014 Order was "not a decision by a state court judge in a different matter involving different defendants," but rather was entered in the "exact same case" and based on the same Master Long-Form Complaint. *Monroe v. Ethicon, Inc., et al.*, No. 19-5384, at 19 (E.D. Pa. Dec. 23, 2019) (Kearney, J.) (E.D. Pa. Feb. 26, 2020); *Quinn v. Ethicon, Inc.,* No. 19-5462, at 8 (E.D. Pa. Dec. 23, 2019) (DuBois, J.). And the decision came not just from the same court, but from the same state court judge. Removing Defendants therefore are correct in arguing that "Plaintiff was on notice at the time she filed this Complaint that, unless she augmented the previously rejected allegations of the Master Long Form Complaint when responding to Secant's Motion to Dismiss, she had no colorable cause of action against Secant." ECF 8, at 5-6.

Plaintiff here asserts no intervening change in the facts or the law. Plaintiff simply refiled legal claims against Secant in the court that already had dismissed those claims as barred under federal law years before. That court has not vacated or otherwise modified its ruling. Plaintiff has not introduced new evidence that would upset the state court's ruling; no court or

11

other body has announced an applicable supervening decision or law; and the earlier decision concluding that the BAAA immunized Secant from suit was reaffirmed by the same judge that has been overseeing the state court's pelvic mesh litigation from the beginning.

I acknowledge that a decision from a single trial judge—even one as experienced and respected as Judge New—does not definitively decide any legal issue. But a search of relevant public databases reveals that none of the multiple litigants before Judge New in 2014 appealed his order, notwithstanding the stipulation that would have preserved all then-pending claims against Secant had his decision been reversed. The absence of appeal underscores the strength of the immunity established by the BAAA. But of greater importance, nothing prevented Plaintiff here from appealing Judge New's 2019 Order of dismissal. That failure has particular significance in the context of this case, where it was virtually a foregone conclusion that Secant would be dismissed yet again. Despite such knowledge, Plaintiff filed, named Secant, and then simply abandoned the claim following dismissal. In my view, this demonstrates "no real intention in good faith to prosecute the action," rendering Secant's joinder fraudulent.

Plaintiff's motion to remand will therefore be denied.

## V. Removing Defendants' motion to transfer to the Northern District of Texas will be granted

With federal jurisdiction established, Removing Defendants contend that this Court cannot exercise personal jurisdiction over them or, in the alternative, that transfer to the Northern District of Texas is warranted because Plaintiff is "a Texas resident who alleges injuries related to medical treatment provided in Texas." ECF 7-1, at 1. I disagree that I cannot exercise personal jurisdiction over Removing Defendants but agree that transfer is warranted.

A federal district court may transfer a case when three conditions are met: (1) the civil action could have been properly brought initially in the proposed transferee federal court; (2)

transfer will be more convenient for both the parties and the witnesses; and (3) the transfer will be in the "interest of justice." *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citing to 28 U.S.C. § 1404(a)). "The decision to transfer is in the court's discretion," but "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). If a court considering transfer determines that a case could have been properly brought in another district, the court must then evaluate "all relevant factors," including "the private and public interests protected by the language of § 1404(a)," to determine if transfer is in the interest of justice. *Jumara*, 55 F.3d at 879. The party moving to transfer bears the burden to demonstrate that transfer is appropriate. *Id.* at 879.

Applying the *Jumara* factors here, transfer clearly is warranted. This action could have been properly brought initially in the Northern District of Texas because a substantial part of the events giving rise to Plaintiff's claim occurred there, including the implantation of the allegedly defective device, which occurred in Fort Worth. ECF 1-1, at 9 (PDF p. 25); *see also* 28 U.S.C. § 1391(b)(2).

Further, the private and public interests protected by Section 1404(a) will be advanced by transfer. *See Jumara*, 55 F.3d at 879.

*1. Private Factors.* In *Jumara*, the Court of Appeals outlined a nonexhaustive list of factors courts should consider when determining whether transfer advanced the parties' private interests. Those factors include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the

location of books and records, but only to the extent that the files could not be produced in the alternative forum.

The principal factor weighing against transfer is Plaintiff's preference for this forum given her choice to file suit in the Pennsylvania state courts. However, as Judge DuBois recently observed in a similar case, "a plaintiff's choice of forum is given less weight where none of the operative facts of the action occur in the forum selected by plaintiff." *Quinn*, No. 19-5462, at 6-7 (internal quotations omitted); *accord Lehr v. Stryker Corp.*, 2010 WL 3069633 at *3 (E.D. Pa. Aug. 4, 2010); *Nat'l Mortg. Network, Inc. v. Home Equity Ctrs., Inc.*, 683 F. Supp. 116, 119 (E.D. Pa. 1988); *Schmidt v. Leader Dogs for the Blind, Inc.*, 544 F. Supp. 42, 47 (E.D. Pa. 1982); *Fitzgerald v. Central Gulf Steamship Corp.*, 292 F. Supp. 847, 849 (E.D. Pa. 1968). Further, a plaintiff's choice of forum also is given reduced weight if that plaintiff is from out of state. *Quinn*, No. 19-5462, at 6-7; *accord Cameli v. WNEP-16*, 134 F. Supp. 2d 403 (E.D. Pa. 2001); *Jordan v. Delaware & Hudson Railway Co.*, 590 F. Supp. 997, 998 (E.D. Pa. 1984). Thus, as a citizen of Texas, and given that the events giving rise to Plaintiff's claim arose in the Northern District of Texas, Plaintiff's desire to litigate in the Eastern District of Pennsylvania carries less than full weight.

Removing Defendants' preference for the Texas forum carries little weight because they lack a connection there in the same way Plaintiff lacks a connection to Pennsylvania. However, the remaining private interest factors favor transfer or are neutral. The third factor, where the claim arose, favors transfer. The pelvic mesh device was implanted in Texas and the legal claims arose from injuries suffered in that district. The remaining three factors are neutral. Litigating in the Northern District of Texas likely would be more convenient for Plaintiff (though she obviously sees no inconvenience litigating in Philadelphia), whereas litigating in

Philadelphia likely would be more convenient for Removing Defendants, which are based in New Jersey. Key witnesses reside in Texas, but there is no showing they would be unavailable here. And any records that exist in Texas certainly can be produced here.

In summary, as to the private factor enumerated in *Jumara*, two are close to being in equipoise, three are neutral, and one favors transfer.

*2. Public Factors.* The Court of Appeals also outlined various public factors courts should consider when determining whether to transfer a case, which more clearly weigh in favor of transfer. These include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80.

The enforceability of the judgement is not an issue, given that New Jersey, where the Removing Defendant are headquartered, has adopted the Uniform Enforcement of Foreign Judgements Act. *See State of Maine v. SeKap, S.A. Greek Co-op. Cigarette Mfg. Co., S.A.*, 920 A.2d 667, 672 (N.J. Super. Ct. 2007) (discussing "New Jersey's version of the [Uniform Enforcement of Foreign Judgements Act] which is this state's selected mechanism for discharging its Full Faith and Credit obligations"). As to practical considerations, necessarily, trial of an action that has its roots in a medical procedure performed on a Texas citizen in Texas is more convenient there. As to court congestion, under the individual calendar system the pace

at which a case moves is uniquely a function of the assigned judge.[4]  Thus, except in districts where the Judicial Conference has identified the existence of a judicial emergency, and the Northern District of Texas is not such a district, congestion does not weigh against transfer.

Empirically, the Northern District of Texas has a larger caseload, but time to disposition in that district is virtually identical to time to disposition here.  Median time from filing to disposition is slightly longer in Texas—7.6 months there as compared to 6.0 months here—but median time from filing to trial is two months shorter in the Northern District of Texas.[5]  Further, this district encompasses Philadelphia, where substantial numbers of pelvic mesh cases have been filed.  Thus, this Court has seen a heavy volume of diversity removals in such cases.

The final three public-interest factors strongly favor Texas.  This is a dispute between a Texas citizen and two corporate entities neither of which are from Pennsylvania.  Texas has its own law of products liability that will govern this dispute, and federal judges sitting there are undoubtedly well-versed in its provisions.  Separately, in a factor not enumerated in *Jumara*, the Supreme Court in *Gulf Oil Corp. v. Gilbert* observed that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  330 U.S. 501, 508-509 (1947).  I discern no reason why Pennsylvania citizens should serve as jurors to adjudicate a dispute whose primary relation is to Texas.  Pennsylvania unquestionably has an interest in the safety of these medical devices, but its courts have had multiple opportunities to address those issues. *See, e.g.*, *Hammons v. Ethicon, Inc.* 190 A.3d 1248 (Pa. Super. Ct. 2019), *allocatur granted* 206 A.3d 495 (Pa. 2019).

---

[4] *See* Institute for the Advancement of the American Legal System, Civil Case Processing in the Federal District Courts: A 21st Century Analysis 38 (2009) (accessed online).

[5] United States Courts, *Federal Court Management Statistics*, December 2019 (accessed online).

16

Given the minimal deference owed to Plaintiff's choice of forum, and substantial reasons to transfer following analysis of *Jumara*'s public factors, transfer to the Northern District of Texas pursuant to Section 1404(a) is warranted.

## VI.  Conclusion

For the foregoing reasons, the Court denies Plaintiff's Motion for Remand, denies Removing Defendants' Motion to Dismiss, and grants Removing Defendants' Motion to Transfer Venue.  The case is transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

An appropriate Order follows.

    s/ Gerald Austin McHugh
United States District Judge

17